The next case, number 25-1721, Thomas Marshall v. Todd Blanche et al. At this time, would Counsel for the Appellant please introduce himself on the record to begin? Good morning, Your Honors. Kyle Singal for Appellant Thomas Marshall. I respectfully request two minutes for rebuttal. You may. The Executive Branch is using cases like this to overstep the separation of powers in two ways. First, the Executive Branch usurps judicial power by denying litigants the judicial resolution of Second Amendment claims on the grounds that Section 925C acts as an exhaustion requirement when it does not. Second, the Executive Branch usurps legislative power by insisting that its atextual interpretations of Section 925C and the judicial review provision therein are prospectively conclusive and thereby limit the scope and duration of Section 922G1's permanent ban on a nonviolent misdemeanors possession of firearms. On 925C, the 925C point, if we were to conclude 925C is functioning to some extent and to an extent greater than you treat it as functioning, are you making an independent argument that the Second Amendment prohibits the government from subjecting a felon such as your client to having to go through the 925C process at all? Because I wasn't clear that you were making such an argument as opposed to simply an argument that because of how 925C operates, in fact, it can't be a basis for denying the Second Amendment challenge. So three responses. First, I will clarify that Mr. Marshall is not a felon. He's just subject to the rule. Second, in one of the 28J responses, I did discuss the burden imposed by the 925C mechanism. I did so again this morning. I don't know if Your Honor saw. If you were here, I was here. But following last night's letter, I unsurprisingly received an e-mail from the Pardon Attorney's Office explaining the steps that Mr. Marshall would need to take. And there is a burden. It's official court records. The steps are basically applied to the pardon attorney. Yes, yes. But it's official court records, and an FD 258 fingerprint card can cost lots of money and time. It's not. That's not my question. So we made that argument. What argument? The argument that that's a burden that should not be imposed upon Mr. Marshall because the burden is on the government to justify the ban, not the burden. If you separately developed an argument that that is a Second Amendment violation. I believe in one of the 28J responses where this has come up, yes, Your Honor. But not in the opening briefing. I don't believe it came up in the opening briefing. What do you mean it didn't come up? I don't think the argument about 925C certainly wasn't made below because the district court litigation was prior to the alleged reinvigoration of 925C. And it was certainly prior to any grants under 925C. So I think anything would just be either in a reply or more likely in the 28J letters. But, yes, Mr. Marshall takes the position that there is an impermissible burden placed upon applicants like him to go through the process. And, secondly, the process itself is not a case. That issue has not been addressed by the district court, right? Correct. So would it make sense for the district court to address that issue first? It sounds like a legal question to me whether Bruin permits placing this burden on an applicant. So no is the answer to my theory question. I see. But being a court of appeals, we're in the habit of deciding legal questions after the district court has decided them. Well, and here you've got this sort of constantly changing landscape where before, even if the district court were to decide something, then the Supreme Court is going to come down with Amani. At some point, the court of appeals needs to rule on the controversy before it. And, Your Honor, I would— Counsel, I'm not sure I agree that it's a pure issue of law. Assuming one can accept an as-applied attack, even in colonial eras, there were mechanisms to say more or less, okay, I'm no longer a threat to the community. Maybe you had to go before a local magistrate. But it is inconceivable to me that there were not such procedures. There were. Okay. I'm glad we agree on that. So if there were such procedures at the time, even if we were to adopt the history and tradition as applied analysis, wouldn't we have to do some comparison of what those burdens look like at that time, how burdensome they were compared with whatever burden you say now exists? Only if you accept the premise that Marshall belongs to a category of people that could have been disarmed in the first place. So those were, for example, with loyalists who were in the category of people that were— No, no, no. Well? No, no, no, no. This argument is independent. Well, then I think we disagree because the oaths that we're talking about, that one could go take an oath and say I'm no longer dangerous, that was for categories of people that were broadly viewed as dangerous by those in power. Wouldn't they have talked to the local minister or somebody and said, hey, is this guy a liar or the local bartender? And, you know, one of the requirements here is you get an affidavit from three people who say, yeah, you have, in fact, reformed. You're telling the truth. There's some mechanism to actually look at whether you are telling the truth. It's a great idea. It's a great idea. If it were the backstop for Second Amendment rights in a way that had teeth, I think Congress could do something like this. I think temporary disarmaments following criminal convictions with outs for people who have shown they're no longer a danger is the post-Bruin path to regulating firearm possession. Don't you think the Second Amendment allows that? I thought you just told us you're bringing a Second Amendment challenge to that. I think it allows Congress to do something different than what it's done in Section 922G. My opening line on Taker was under Bruin, Congress has the power to disarm violent criminals. It has the power based on. But you must then think there is some history and tradition of having a mechanism for people who have served their sentence as a felon for not getting their gun immediately and instead having to make some showing to somebody. I don't know about the history. If you served your sentence as a felon, either you were killed or you were almost killed. So there's felons at the founding and there's felonies today. They didn't kill every felon. No, I know. I understand that. But if we're going to make the analogy, make the category felons. I think we have to clarify whether the category is violent. You said to me the path forward. Is Congress. Congress providing a mechanism for individuals. Or were you saying? To disarm, not for individuals to. So, for instance, envision the sentencing sheet that every judge has at sentencing. Have a box. I find the defendant poses a danger and should be disarmed. I think that if you have a finding of danger, that tracks with Rahimi. And as long as it's temporary or there's an actual off-ramp. But you said it has to be part of the sentence. I think that's one way they could do it. It doesn't have to be part of the sentence. It would be an easily administrable way to do it. If it doesn't have to be part of the sentence, that must suggest that even after the sentence is served, the government could institute an administrative regime of nonetheless requiring a person to prove they weren't dangerous. I don't know that. Just by version of their felon. I thought that's what you just said. No, that's not what I just said. Oh. Well, what did you say? I said Congress can disarm violent criminals. No one's challenging that, for instance, 922-G1 is applied to a murder is constitutional, right? And so then I think in that case, at least no one in this room appears to be challenging that, right? It would be very simple for there to be a mechanism where Congress says, okay, when a court makes a finding of guilt. That's helpful. So let's say the murderer is released after 25 years. Yeah. I think Congress could have a mechanism that says upon a showing of X, Y, and Z, you can restore your right. 925-C isn't it. Because the history and tradition permits that? Because the history and tradition permits that. So what history must be a matter? That's, I think, the force of Judge Lynch's question. I think if you look at Judge Lepar's opinion in Williams in the Sixth Circuit. Can I finish? Sure. Because what I think Judge Lynch is asking is if it's the case that for reasons that you've explained, the 925-C Second Amendment challenge has now been made because there was no good reason to make it sooner. The district court has not passed on that question. And we come to this case without having either party confronted directly the question of is there an analog historically to 925-C? Yeah. 925-C can't be the analog because it is inherently discretionary. It's not if you sign it, swear the oath, we'll give you your guns back. You have to prove to the satisfaction of the Attorney General that you're not likely to pose a danger to the community or to the public. It's purely discretionary. I'm sorry. To me, that argument is a non-starter. Even in colonial times, there would be discretion. That's what judgment is all about. And, you know, maybe there's a close manslaughter case, and 20 years later, the local constabulary becomes convinced this guy is no longer a threat. That's a judgment call. Which is why judges should make that call, not the Attorney General. And that's why it's stepping over the separation of powers. I'm sorry. Who has to make that call? A judge, a neutral magistrate, just like with the surety laws that Rahimi endorsed as a predicate for 922-G8. These are all arguments about what the history would be that might bear on a Second Amendment challenge to 925-C in particular as a separate burden. It's no different from the pardon power. We're not challenging the pardon power as being unconstitutional. We're not challenging 925-C. 925-C isn't, by its text, purported to be an exhaustion requirement. The Department of Justice has glommed onto it in recent months. They have not been making this argument, to my knowledge, in the Supreme Court. Let's skip over the 925-C. Do you have a further question on 925-C? No. Let's move on past 925-C. With respect to Mr. Marshall, Congress first in the 1938 Act banned transferring weapons to people who committed violent crimes. Burglary, assault with intent to rob, rape, murder, fine. That fits with historical tradition. If you're going to draw a principle, follow Bruin and look for a founding-era regulation of the right to possess a firearm, you can look to laws that banned or punished by death crimes that were then felonies at the founding. I think by analogy, because we're not looking at a law trapped in amber, you could extend that to laws punishable by death or maybe even life without parole today. But you can't extend that to reaching a 20-year-old DUI unless you're going to extend it to all crime or all dangerous activity. There's no limiting principle on that view. In order to disarm Marshall on the ground that he's somehow dangerous today for what he did 20 or 30 years ago, the logic would have to be that anyone who once does a dangerous thing loses their Second Amendment rights. That's not consistent with Bruin. So long as we're into the dangerousness test territory, if we were to adopt such a test, what should district courts look at? Do we just look at a generic crime of conviction, the entire criminal record? For instance, in this case, does it matter that there are two convictions for the same thing over a period of time? What do you suggest? So you'll be relieved to learn I don't advocate for a categorical approach. I don't think anyone wants that. I don't think it makes sense in this context. Now, I understand that in the criminal context when it comes to applying 922G1, not having a categorical approach would risk some due process and notice concerns. And that's outside the scope of this case. But I think, at least in a civil case, the district court should be empowered to view all the relevant facts to make, as Judge Lynch indicated. Even though none of those facts are facts that the conviction had to rest on? Well, I think the question is, is this person the kind of dangerous person that Congress can disarm today, consistent with the history and tradition of disarming people? Is the relevant that the ground Congress gave for disarming them has nothing to do with those facts? Well, if we're looking at 922G1, I don't think we're going to find that 922G1 passes muster because it's not based on any sort of danger notion. It's based on workability concerns, right? 922G1 was a compromise product. Of course it was. So is that then really just a facial challenge? No, it's a reason why it's going to be difficult in cases like Mr. Marshall's to uphold it. Of course, if it were murder, it would be different. Why? Because at the founding, murder was punishable by death, and murder is still punishable by death, and thus one who has committed murder. But every felony was punishable by death. But only certain things were felonies back then. This Court recognized the same in Booker in a footnote in 2011, that the category of crimes denominated as felonies back then was far narrower than what's denominated as felony today. Last question on standing for the pre-enforcement review challenge. As I read 922G, it only applies to firearms that have a connection to interstate commerce, correct? Correct. In the pleading, there's no allegation that that's the kind of firearm you want. There's an allegation that you fear getting any firearm because any firearm could subject you to the prosecution. But 922G by its terms does not apply to every firearm in the United States. I think that under Wickard v. Fildren and every other case they're from, any firearm by definition is part of the national market for firearms, and thus under Congress is necessary. Is the case law established that? I don't think case law establishes that. I don't think anyone's gotten out of a 922G conviction on the grounds that the gun they possessed was grown in their backyard. That's a different question. I understand. There are guns that are not subject to 922G. The reasonable inference is that unless Mr. Marshall is a gunsmith making them out of the iron ore he quarries himself on his mine, the gun had to have traveled in interstate commerce. There's no way to – It's a leading industry in New Hampshire. There are a lot of gun manufacturers there. But as long as it's bought or sold, even interstate, it still counts as interstate commerce under Lopez. I don't know. That's a factual issue. May I say one last thing on 925C? As far as I'm aware, it's reversible. That means even if the relief is granted, it can be ungranted. This was brought up at the Third Circuit en banc argument. No ruling has been made on it. But it's not in the text. We don't have a rule yet. But as far as I can tell, a reversible discretionary relief is not a remedy at all. When was that argument? I believe it was February 11th, the Third Circuit en banc. I think that's right. Okay. Thank you. Thank you, Your Honors. Thank you, Counsel. At this time, would Counsel for the Government please reintroduce himself on the record? Good morning again, Your Honors. Josh Handel for the United States. I'd like to start out by clarifying a few things about Section 925C. Judge Lynch, you were asking me about the timeline for when that will become operative by way of a final rule. I just wanted to point out that there was an interim final rule issued in March of 2025. It was that authority under which the Attorney General granted the first group of prohibited persons restoration of their firearm rights and the second group of 22 persons who just received their firearm rights back in February. So this is currently effective. I grant that it is proceeding on a little bit of an ad hoc basis while the interim final rule is in place and while we are finalizing the actual application and final rule. But just with respect to Mr. Marshall's case, so Mr. Marshall was invited to apply for relief under Section 925C in the same way as the 22 civil plaintiffs who received their firearm rights back in February. That invitation was sent to Mr. Marshall last December. As part of that invitation, I was actually the one who sent it, I asked my friend on the other side to please let me know as soon as possible whether he intends to make this request on behalf of his client. I did that so that I could flag Mr. Marshall's application if it came into the department and facilitate him getting timely relief. Was that prior to the district court's ruling? No, this was after. Yes, Your Honor. The IFR did not actually, the interim final rule did not actually issue until after the district court's ruling. So are you in agreement that there's no waiver of the Second Amendment challenge to 925C? Yes, there's no waiver. There also just is no Second Amendment challenge to 925C as far as I can tell. The representation was that in the response to the 28J, they made the argument that there is now a Second Amendment challenge to that burden and that they had no reason to make that argument any point sooner than then. Understood. To the extent that that argument has been put forward in a 28J, I would just point out that these are minimal burdens that have been of the type that were approved in Bruin when Bruin expressly approved shall issue regimes that require applicants to undergo background checks and firearms training. It's of the type of. But this is, the question is whether you can subject a person to that burden just because they're a felon. That's the nature of the Second Amendment challenge, which is no, you cannot. Yes, I understand that, Chief Judge Barron. Well, I think, let me just say, I think there are maybe two separate challenges going on, right? The first one is to the classification of people who fall within the presumptive ban under 922G1. The second challenge that was perhaps raised in a 28J letter is that notwithstanding that there is the safety valve on the back end, that is insufficient because it imposes onerous burdens or something like that. But the first argument is that what is impermissible is a lifetime prohibition. Correct. But if 925C is up and operative, there is not a lifetime prohibition. Correct. But if the burden 925C imposes is not permissible because history and tradition doesn't say you can do that post-sentence, then that would be the Heller challenge, right? That would be the Bruin challenge. Because there just isn't, in fact, a lifetime ban at present in the United States of America. There just is not such a thing. There was at the time of range in the earlier cases because 925C was not up and running. Yes, I think that's right. The only thing that I would bracket there is that even before 925C was reinvigorated by the department, there was also a provision, I think it's 921A20 or something like that, that is similar to the provision this court cited in minor as to the defeasibility of what would otherwise be a lifetime prohibition. Obviously, in minor, you were dealing with 922G9, but that pointed to ‑‑ But in the case in which we end up upholding it, as in minor, that drops out. But if you're now thinking, let's say you thought the range concurrences post en banc had some force so that there are as applied challenges to lifetime bans that would be problematic, that concurrence relies on the fact that it is, in fact, a lifetime ban because 925C was not operative. Once 925C is operative, we just don't even have the question of is it permissible to have a lifetime ban? There isn't one. The question then would be is it permissible to have this type of regime, which has its own history and tradition analysis, I suppose, that we would have to do, which the district court hasn't confronted and you've not had any reason to make an argument in response to it. They've not had any reason to make arguments in response to you. That's correct, Chief Judge Barron. I understand that the concerns that were raised in range about some of these extreme edge cases, in our view, all of that is taken care of by the section 925C mechanism. And you make an independent argument that's also taken care of, even if you didn't have 925C, just as you argued in range. Oh, yeah. I mean, I make all the arguments. So if we agree with you on that first point, then obviously this drops out. But if we thought that first point might be challenging, then. I think that's right, Your Honor. I think also you could, as a matter of constitutional avoidance, just say, well, we do have section 925C. Mr. Marshall has been invited to apply for that. And because there is this safety valve on the back end, we don't have to confront the thornier question of whether a lifetime ban would be. What do we do with his challenge under the Second Amendment to that burden, the one imposed by 925C? Well, Your Honor, so I think you could do a couple of things. Obviously, it's always within this Court's discretion to remand it to the district court for consideration in the first instance. I believe we suggested that as a possibility in a footnote on the last page of our brief. I also think, though, that the burdens of the 925C process are so minimal that they fall within the types of regimes that the Supreme Court has already approved in Bruin that shall issue regimes. None of those burdens were imposed just by virtue of having a felon status. But I think that goes to a separate question, which is whether Congress is historically permitted to make front-end categorical judgments about dangerousness. Why wouldn't it be just relevant to the question of what kind of burdens can it put on people to get guns just because of their felon status? Again, I think – You couldn't put a tax on them? I mean, there's all kinds of things short of a lifetime ban that might raise a Second Amendment problem. I'll have to reread Bruin. I take your argument to be if it passes muster under history and tradition, you just don't get to the burdens issue. But this burdens issue has not, in fact, been presented to any court of appeals, to the best of my knowledge. I think the Fifth Circuit said, oh, the 925C isn't operational yet, or nobody has argued anything about it. So are you saying just as a matter of law – Well, I'm not sure I want to go there because neither one of you has briefed the law. I mean, we understand why. Timing is everything. The issue just came up. I understand that point, Judge Lynch. I think what I would say – so first on the question of whether any other court has considered Section 925C, I would note that in the Seventh Circuit's decision in Watson just last week, they did make a point at the end of the analysis that Section 925C has been reinvigorated such that Section 922G1 is no longer an immutable permanent lifetime ban. That followed a lot of other historical reasoning. What did they say after making that observation? Affirmed. Was there any reasoning between the observation and the conclusion? I read that. I didn't think it was key to their reasoning. I think it was a little bit of an afterthought, Your Honor. I agree with that. But I do think – And nothing about the burdens of proceeding through 925C, right? There was no analysis of the burdens of proceeding, no. But again, just on the point about the burdens of proceeding, again, as I mentioned to Chief Judge Barron, it's always an option to send this back to the district court, to have the district court consider that question in the first instance. I think it's quite clear that these are minimal burdens of the type that would fit within the Bruin framework. They're of the type that this court approved, I think, just last week in Beckwith. Just to make the point, suppose the rule was any person in this country who wants to get a firearm has to go through the 925C process and prove they're not a danger. Would that be permissible? Right. No, I do not think – Okay, so their argument is this isn't different than that because the class of persons being subjected to it is the class of persons that our history and tradition does not allow to be subject to it, which are just people who had felonies. Right. That's just a pure Second Amendment Bruin-type challenge, and I don't think the fact that the burden's minimal is dispositive of that. It's going to be a question of, well, are there historical analogs of the kind that Judge Lynch was identifying that might exist that show, yeah, you can do that to this class? No, I think that's fair, Chief Judge Barron. I think the relevant question now is can Congress make predictive judgments based on a certain cutoff for a sentencing range for a prior offense that subjects a person to presumptive disarmament subject to a back-end safety valve like 925C? And you're correct, the district court did not have occasion to consider that question. Last thing is just on the standing question. In the earlier range decision, Judge Roth was concerned about standing with respect to the pre-enforcement review challenge there because of the fact that 922G1 only applies to not all guns but guns that have a particular connection to interstate commerce, suggesting that there would need to be an allegation that that's the kind of gun I would want to have because if I'm not possessing that kind of gun, I'm not at risk of imminent prosecution, and therefore I can't bring a pre-enforcement challenge. As I read the complaint here, the allegation is not that the gun they want will necessarily be a gun that 922G1 covers, but that they fear that any gun they get will be such a thing, which sounds a little bit like a chill argument. Traditionally, we don't allow chill arguments for pre-enforcement review challenges except under the First Amendment. So what do we do with that? So, Your Honor, again, we haven't challenged their standing here. I think that it is the case that when we bring a prosecution under 922G1, we actually do prove up the jurisdictional element. Obviously, most of the time it's stipulated, but normally we prove that up by showing that either the firearm or ammunition traveled in interstate or foreign commerce. You know, I don't want to kind of pre-term it, you know, considerations that we have about ghost guns and things like that that might be entirely an intrastate manufacturer but still affect the broader interstate market. Again, that certainly has not been briefed in this case. We may ask you for supplemental briefing on the standing issue. Okay, that would be fine. Unless the Court has further questions, I'll rest on the briefs we've submitted so far and respectfully request that you affirm the judgment below. Thank you. Thank you, Counsel. At this time, would the attorney for the appellant please reintroduce himself on the record? Kyle Singolf for Appellant, Tom Marshall. On Appendix A8, Mr. Marshall declared his intention to purchase and possess a handgun. Purchase implies commerce, I would argue, that the reasonable inference is one purchasing a gun rather than I thought the gun had to travel interstate. I think any gun that one purchases in this country, and I think we can supplementally brief that issue, but I can't imagine that that's not the case, that a gun purchase doesn't qualify as a gun that is in interstate commerce. But we can by all means look at that. The argument, I think the main point here is, when I say there's no Second Amendment challenge to 925C, what I mean is there is no argument to strike it down. Now, we did put in the reply the burdens on page 14 of Marshall's reply brief, and it was the third point that I raised in the reply when opposing counsel raised it, this 925C in the red brief, seeking relief imposes a substantial burden. I go through financial. I go through the application itself. I go through some of the questions asked. It's not that we want to strike down 925C. It's a response to the argument that 925C cures the Second Amendment harm. Here's the thing that is just puzzling to me. When 925C is not operative, it makes sense for the Second Amendment challenge to be to the lifetime prohibition because what always has to be challenged is the nature of the burden. So if it's a lifetime prohibition, then I say that's what you can't do. If it's a tax of $10, then you're saying you can't tax me $10. There is no lifetime prohibition at present. There is a regime which says if you're a felon, you cannot possess it unless you succeed in showing the requirements under 925C. So that's what then is the burden, and that's what has to be challenged, and that's what history and tradition has to be matched up against. What's wrong with thinking about it that way? I'm saying that prior to the 925C, you could always get a pardon, and so it's not really a lifetime burden because if you're pardoned, then the disability goes away. Why did the teller resolve that by saying that the pardon wasn't an answer to that question? And this is no different from the pardon because it's— But that hasn't been resolved in any case. That's the question. I would invite Your Honor to do so. Rejecting a defense to our allegation does not entail that we need to sort of strike down— I think we're in agreement on this. There's no obligation for Mr. Marshall to plead that Section 925C is unconstitutional. I think the problem is that the judicial review provision in Section 925C doesn't actually ensure that it's going to serve as a resolution mechanism. I guess there's a question whether the 925C becoming operative after the complaint mooted the case. I don't think that it could have mooted the case, even if it's in play exactly as the government says it is, right, because it's purely discretionary. It can be reversed. But at the time, the only challenge was to a regime that didn't include 925C. That's no longer true. The challenge was to a law that would put Mr. Marshall in prison today if he picked up a gun today. Thank you. Thank you, Your Honors. Thank you, counsel. That concludes argument in this case.